**Evelyn BLIEK and Tish Eberline, individually and on behalf of all other persons similarly situated, Plaintiffs,**

v.

**Charles PALMER, in his Official Capacity as the Director of the Department of Human Services, and Charles H. Sweeney, In His Capacity as the Director of the Iowa Department of Inspections and Appeals, Defendants.**

No. C 93–4083.

United States District Court,
N.D. Iowa,
Western Division.

Feb. 1, 1996.

Joseph G. Basque, Martin Ozga of Legal Services Corporation, Iowa, Des Moines, Iowa, and Linda Cooper of HELP Legal Assistance, Davenport, Iowa, for plaintiffs.

Assistant Iowa Attorney General Barbara E.B. Galloway, Des Moines, Iowa, for defendants.

## MEMORANDUM OPINION AND ORDER REGARDING CROSS–MOTIONS FOR SUMMARY JUDGMENT

BENNETT, District Judge.

### TABLE OF CONTENTS

I. INTRODUCTION AND BACKGROUND ................................... 1478
II. STANDARDS FOR SUMMARY JUDGMENT .............................. 1479
III. FINDINGS OF FACT ................................................ 1481
IV. CONCLUSIONS OF LAW ............................................. 1482
 A. Background on the Food Stamp Act of 1964 ............................ 1482

B. Standard of Review ............................................. 1483
C. Waiver Authority ............................................... 1484
D. Adequacy of the Notice as to Settlement, Adjustment, Compromise, and
 Denial ......................................................... 1485
 1. The Due Process analysis ................................... 1485
 2. An appropriate interest .................................... 1486
 3. What process is due? ...................................... 1486
 a. The Mathews test ..................................... 1487
 i. The private interest ................................. 1488
 ii. Risks of erroneous deprivation ..................... 1489
 iii. The governmental interest.......................... 1490
 b. Balancing of the Mathews factors ............................ 1490
E. Equitable Estoppel ............................................. 1492
F. Permanent Injunction .......................................... 1493
V. CONCLUSION ................................................... 1493

At its core this class action litigation raises an important and novel federal constitutional question concerning the rights of some Iowa recipients of benefits under this nation's food stamp program: Does due process require State of Iowa officials instituting collection of food stamp overpayments pursuant to the Food Stamp Act of 1964 to give notice to class members of their statutory rights to request a settlement, adjustment, compromise, denial, or waiver of all or part of overpayments received solely as a result of agency error? Surprisingly, no federal court appears to have addressed this precise issue.

## I. INTRODUCTION AND BACKGROUND

Plaintiffs Evelyn Bliek and Tish Eberline filed their complaint in this matter on September 28, 1993, pursuant to 42 U.S.C. § 1983, seeking injunctive and declaratory relief from Defendants' actions to collect food stamp overpayments that have resulted from agency error. In Count I, Plaintiffs assert that Defendants, State of Iowa officials who are in charge of various aspects of the federal Food Stamp Program, 7 U.S.C. § 2011 *et seq.*, violated the Due Process Clause of the Fourteenth Amendment when they sought to collect food stamp overpayments attributable to administrative error without first provid-ing notice of an alleged right to request a waiver of the overpayment. In Count II, Plaintiffs contend that Defendants should be equitably estopped from attempting to collect food stamp overpayments that have occurred as a result of agency error and through no fault of Plaintiffs. On February 6, 1995, a class was certified in this matter.[1]

Defendants filed a motion for summary judgment asserting that they have not violated the Due Process Clause because the Secretary of Agriculture has never delegated waiver authority to state agencies administering the Food Stamp Program. Second, Defendants assert that the granting of estoppel in such a case would nullify Congress's express intent that state agencies collect food stamp overpayments due to agency error. *See* 7 U.S.C. §§ 2022(b)(2)(B) & 2025(a). Plaintiffs have resisted Defendants' motion and filed their own motion for summary judgment in which they contend that the Secretary of Agriculture has delegated that office's power of waiver to the states in 7 C.F.R. § 271.4(b), and therefore, Defendants' failure to notify Plaintiffs of this right was violative of due process. Plaintiffs further assert that the doctrine of equitable estoppel is applicable here and that Defendants should be equitably estopped from attempting to collect overpayments that have occurred as a result of agency error.

---

1. The class, certified pursuant to Federal Rule of Civil Procedure 23(b)(2), represented by named Plaintiffs Evelyn Bliek and Tish Eberline, consists of

 all individuals residing in the State of Iowa who have participated in the food stamp program in the State of Iowa, who have been determined to have received an overpayment of food stamp benefits as a result of agency error, and who have been subjected to collection efforts based on such overpayments since September 28, 1991.

Order Regarding Mot. for Class Certification at 8.

A hearing on the cross-motions for summary judgment was held on October 26, 1995. At the hearing Plaintiffs were represented by Joseph G. Basque and Martin Ozga of Legal Services Corporation of Iowa, Des Moines, Iowa. Defendants were represented by Assistant Iowa Attorney General Barbara E.B. Galloway, Des Moines, Iowa.

At the hearing, Plaintiffs were understood by the court to argue that not only were Plaintiffs contending that they were not informed by Defendants of their asserted right to request a waiver of all or part of their food stamp overpayments, but also that they were not informed of their asserted right to request that Defendants employ their authority to settle, adjust, compromise, or deny all or part of their food stamp overpayments. This discrepancy between what Plaintiffs pled and what they argued was the result of their using the term "waiver" in its generic sense, rather than in the statutory sense of the term as found in 7 C.F.R. § 271.4(b). As a result, following the hearing, the court granted Plaintiffs ten days in which to file a motion to amend their complaint in this matter to reflect the claims raised at the hearing. Defendants were then to have seven days after any motion to amend was filed in which to submit a resistance to the motion to amend. The court further ordered that should the court grant a motion to amend the complaint, the parties would be afforded the opportunity to submit, at their discretion, supplemental memoranda of law within seven days of the date that an amended complaint was filed. Plaintiffs did indeed file a motion to amend the complaint in this matter, which was granted by Chief United States Magistrate Judge John Jarvey on December 8, 1995.

Plaintiffs' amended complaint in this matter pursuant to 42 U.S.C. § 1983, filed on December 8, 1995, seeks injunctive and declaratory relief from Defendants' actions to collect food stamp overpayments that have resulted from agency error. In Count I of their amended complaint, Plaintiffs assert that Defendants violated the Due Process Clause of the Fourteenth Amendment when they sought to collect food stamp overpayments resulting from administrative error without first providing notice of an alleged right to request a settlement, adjustment, compromise, denial, or waiver of all or part of their food stamp overpayments. In Count II, Plaintiffs contend that Defendants should be equitably estopped from attempting to collect food stamp overpayments that have occurred as a result of agency error and through no fault of Plaintiffs. On January 2, 1996, Defendants filed an answer to the amended complaint. Although given the opportunity to do so, neither party has submitted a supplemental brief. This matter is now fully submitted.

## II. STANDARDS FOR SUMMARY JUDGMENT

■ The Eighth Circuit Court of Appeals recognizes "that summary judgment is a drastic remedy and must be exercised with extreme care to prevent taking genuine issues of fact away from juries." *Wabun–Inini v. Sessions,* 900 F.2d 1234, 1238 (8th Cir.1990). On the other hand, the Federal Rules of Civil Procedure have authorized for nearly 60 years "motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Thus, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Wabun–Inini,* 900 F.2d at 1238 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986)); *Hartnagel v. Norman,* 953 F.2d 394, 396 (8th Cir.1992).

■ The standard for granting summary judgment is well established. *Rule 56* of the Federal Rules of Civil Procedure states in pertinent part:

Rule 56. Summary Judgment

(a) For Claimant. A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for

summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

*Fed.R.Civ.P.* 56(a), (b) & (c) (emphasis added); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Beyerbach v. Sears,* 49 F.3d 1324, 1325 (8th Cir.1995); *Munz v. Michael,* 28 F.3d 795, 798 (8th Cir.1994); *Roth v. U.S.S. Great Lakes Fleet, Inc.,* 25 F.3d 707, 708 (8th Cir.1994); *Cole v. Bone,* 993 F.2d 1328, 1331 (8th Cir.1993); *Woodsmith Publishing Co. v. Meredith Corp.,* 904 F.2d 1244, 1247 (8th Cir.1990); *Wabun–Inini,* 900 F.2d at 1238 (citing *Fed.R.Civ.P.* 56(c)).[2] A court considering a motion for summary judgment must view all the facts in the light most favorable to the nonmoving party, and give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *Munz v. Michael,* 28 F.3d 795, 796 (8th Cir.1994); *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir.1994); *Johnson v. Group Health Plan, Inc.,* 994 F.2d 543, 545 (8th Cir.1993); *Burk v. Beene,* 948 F.2d 489, 492 (8th Cir.1991); *Coday v. City of Springfield,* 939 F.2d 666, 667 (8th Cir.1991), cert.

*denied,* 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 416 (1992).

█ Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for their motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553); *see also Reed v. Woodruff County, Ark.,* 7 F.3d 808, 810 (8th Cir.1993). The moving party is not required by *Rule* 56 to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.*

█ "When a moving party has carried its burden under *Rule* 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1355. The nonmoving party is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Fed.R.Civ.P.* 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *McLaughlin v. Esselte Pendaflex Corp.,* 50 F.3d 507, 511 (8th Cir.1995); *Beyerbach,* 49 F.3d at 1325. Although "direct proof is not required to create a jury question, ... to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" *Metge v. Baehler,* 762 F.2d 621, 625 (8th Cir.1985) (quoting *Impro Products, Inc. v. Herrick,* 715 F.2d 1267, 1272 (8th Cir.1983), cert. denied, 465 U.S. 1026, 104 S.Ct. 1282, 79 L.Ed.2d 686 (1984)), *cert. denied sub nom. Metge v. Bankers Trust Co.,* 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986). The necessary proof that the nonmoving party must produce is not precisely measurable, but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

---

**2.** An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)). "Only disputes over facts

that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Beyerbach,* 49 F.3d at 1326; *Hartnagel,* 953 F.2d at 394.

242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir.1994).

In *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510, *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53, and *Matsushita,* 475 U.S. at 586–87, the Supreme Court established that a summary judgment motion should be interpreted by the trial court to accomplish its purpose of disposing of factually unsupported claims, and the trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir. 1990). The trial court, therefore, must "assess the adequacy of the nonmovants' response and whether that showing, on admissible evidence, would be sufficient to carry the burden of proof at trial." *Hartnagel,* 953 F.2d at 396 (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552). If the nonmoving party fails to make a sufficient showing of an essential element of a claim with respect to which it has the burden of proof, then the moving party is "entitled to judgment as a matter of law." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552; *Woodsmith,* 904 F.2d at 1247. However, if the court can conclude that a reasonable trier of fact could return a verdict for the nonmovant, then summary judgment should not be granted. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Burk,* 948 F.2d at 492; *Woodsmith,* 904 F.2d at 1247. With these standards in mind, the court turns to consideration of the parties' motions for summary judgment.

### III. FINDINGS OF FACT

The parties do not assert that any genuine issue of material fact precludes summary judgment in this action. Both Plaintiffs and Defendants instead contend that the questions on which summary judgment is sought may be disposed of as a matter of law.

Nonetheless, the court makes the following findings of fact, based on the statements of fact as submitted by both parties, to establish the factual background in which this litigation proceeds.

Plaintiff Evelyn Bliek is an elderly individual residing in Buena Vista County, Iowa, and is a citizen of the State of Iowa. Plaintiff Tish Eberline is a single parent residing in Scott County, Iowa, and is a citizen of the State of Iowa. Defendant Charles M. Palmer is the Director of the Iowa Department of Human Services ("DHS"), and is directly responsible for the operation and administration of the DHS. The Iowa Food Stamp Program is one of the programs administered by the DHS. Defendant Charles H. Sweeney is the Director of the Iowa Department of Inspections and Appeals ("DIA"), and is directly responsible for the operation and administration of the DIA. The DIA participates in collection activities against individuals who have received overpayments due to administrative error.

The DHS established a food stamp overpayment claim against Bliek in the amount of $367.00 for the time period of October 1, 1987, through June 20, 1988. The overpayment was due solely to an administrative error on the part of the DHS. In September 1987, Bliek provided the DHS with a copy of her social security check and a copy of her lump sum IPERS[3] payment check from the State of Iowa. Because of these payments, Bliek's food stamp allotments should have been reduced. The DHS, however, did not act upon the documentation supplied by Bliek until June 1988. As a result of the delay, Bliek received an overissue of food stamps in the amount of $367.00 for the period of October 1987 through June 1988.

The DIA mailed Bliek four demand letters during the period of September 1988 through December 1988.[4] The demand letters issued

---

3. The familiar acronym "IPERS" refers to the Iowa Public Employees Retirement System.

4. The text of these demand letters is standard. The demand letters are entitled "DEMAND LETTER FOR OVERISSUES." Two of the letters, dated October 2, 1988, and December 1, 1988, are attached to Plaintiffs' Statement of Facts as Exhibit "A". They stated in pertinent part:

> It has been determined that you or your household received $367.00 more in food stamps that you were eligible to receive during the month(s) of 10-1-87 THRU 6-30-88 BALANCE $367.00
>
> This overissuance was the result of

on behalf of the DHS stated Bliek's right to an administrative appeal before the DHS. The demand letters did not provide Bliek with any information regarding the possibility of the DHS's waiving, settling, adjusting, compromising, or denying the food stamp overpayment. Bliek did not file an administrative appeal to contest the amount of the food stamp overpayment. Commencing on December 1, 1994, Bliek agreed to repay the overpayment by having her food stamp allotment reduced by the sum of $1.00 per month.

The DHS established a claim against Tish Eberline in the amount of $118 for the time period of February 1, 1992, through June 30, 1992.[5] The overpayment was due solely to an administrative error on the part of the DHS. On November 4, 1992, the DHS found that it had not included Eberline's tips in its determination of her food stamp allotment. Instead, the DHS had calculated her food stamp allotment from her gross hourly wages. As a result, Eberline's income was understated, and consequently the DHS overissued food stamp benefits to her.

The DIA mailed Eberline four demand letters during the period of May 1993 through August 1993.[6] These demand let-

ters stated that Eberline had the right to seek an administrative appeal before the DHS. The demand letters did not provide Eberline with any information regarding the DHS's waiving, settling, adjusting, compromising, or denying the food stamp overpayment. Eberline did not file an administrative appeal with the DHS to contest the amount of food stamp overpayment. Neither the DIA nor the DHS has commenced a lawsuit against Eberline to recover the food stamp overissue.

John H. Knaus, Acting Director, Program Accounting Division, Food and Nutritional Service of the United States Department of Agriculture ("USDA"), has indicated to the DHS in a letter dated March 31, 1994, that the Secretary of Agriculture has never delegated authority to state agencies to waive claims of overissued food stamps.

## IV. CONCLUSIONS OF LAW

### A. Background on the Food Stamp Act of 1964

The Food Stamp Act of 1964, as amended, 7 U.S.C. § 2011 et seq. ("The Food Stamp Act of 1977"), established a "federally fund-

---

1. [ ] a household error 2. [ ] an intentional program violation 3. [X] an agency error

If box 1 or 2 is checked, you must sign the Repayment Agreement below for the overissued food stamps and return it to out office on or before OCTOBER 31, 1988

If box 3 is checked, you don't have to but you may sign the Repayment Agreement. No matter which box is checked, if you do not make an agreement and make all payments, we may take a future year's income tax refund or initiate other appropriate collection procedures.

5. The claim against Eberline was originally $204. The claim was reduced to $118 when an $86 credit was entered on December 9, 1993, and the original claim period was changed.

6. The text of these demand letters is similar, but not identical to the letters received by Plaintiff Bliek. One of the letters, dated August 31, 1993, is attached to Plaintiffs' Statement of Facts as Exhibit "B". It stated in pertinent part:

It has been determined that you or your household received $204.00 more in food stamps than you were eligible to receive during the month(s) of FEB 1992 THRU JAN 1993 BALANCE $204.00

This overissuance was the result of

1. [ ] a household or EBT error 2. [ ] an intentional program violation 3. [X] an agency error

If box 1 or 2 is checked, you must sign the Repayment Agreement below for the overissued food stamps and return it to our office on or before September 30, 1993.

If you agree with this overissuance and box 3 is checked, you don't have to but you may sign the Repayment Agreement. If you disagree that you received an overissuance, or if you disagree with the amount, dates, or reason for this overissuance, you must appeal within 90 days of the date of the first demand letter you receive about this claim.

Following a box containing a list of repayment options, the demand letter then states:

If you fail to make a satisfactory agreement, and the overissuance was the result of household error or intentional program violation, your future Food Stamp Benefit will be reduced to repay the overissuance. No matter which box is checked, if you do not make an agreement and make all payments, we may take a future year's income tax refund, other payments that are owed to you by the state, or initiate other appropriate collection procedures. This action is taken in accordance with VII–H claims.

ed, state administered program to supplement the food purchasing power of eligible individuals." *West v. Bowen,* 879 F.2d 1122, 1124 (3d Cir.1989). The food stamp program was designed "to promote the general welfare, to safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households." 7 U.S.C. § 2011. Because "the limited food purchasing power of low-income households contributes to hunger and malnutrition," *id.,* Congress initiated the food stamp program to "permit low-income households to obtain a more nutritious diet through normal channels of trade by increasing food purchasing power for all eligible households." *Id.; see also Atkins v. Parker,* 472 U.S. 115, 117, 105 S.Ct. 2520, 2522, 86 L.Ed.2d 81 (1985). Under the food stamp program, eligible households receive coupons to purchase food from approved retail food stores. 7 U.S.C. § 2013(a). A household's eligibility to receive these coupons, or "food stamps," is determined by calculating the income resources available to the household. 7 U.S.C. § 2014. "The calculation of food stamp benefits [is] based on ... [the] relative levels of household income: the lower the income level, the more food stamps the household is entitled to receive and vice versa." *Baum v. Yeutter,* 750 F.Supp. 845, 847 (N.D.Ohio 1990), *rev'd on other grounds,* 979 F.2d 438 (6th Cir.1992); *see* 7 U.S.C. § 2017(a); *see also Atkins,* 472 U.S. at 117–18, 105 S.Ct. at 2522–23 (the eligibility of an individual household, and the amount of its food stamp allotment, are based on several factors, including the size of the household and its income); *West,* 879 F.2d at 1124 (same).

The Secretary of Agriculture is authorized to administer the food stamp program and to promulgate such regulations as are deemed necessary. *Joudeh v. United States,* 783 F.2d 176, 178 (10th Cir.1986). The Secretary of Agriculture has designated the Food and Nutrition Service (FNS) of the USDA as the agency to act on the Secretary's behalf. *Id.* State agencies bear the responsibility for applying these regulations by determining which households are eligible to receive food stamps, calculating the eligible households' allotments, and issuing the food stamp coupons. 7 U.S.C. § 2020; *see also Atkins,* 472

U.S. at 117, 105 S.Ct. at 2522 ("The Secretary of Agriculture prescribes the standards for eligibility for food stamps, but state agencies are authorized to make individual eligibility determinations and to. distribute the food stamps to eligible households, which may use them to purchase food from approved, retail food stores."). "The federal government pays for the full cost of food stamp benefits, its own administrative costs and at least 50% of eligible state administrative expenses." *Massachusetts v. Lyng,* 893 F.2d 424, 425 (1st Cir.1990); 7 U.S.C. § 2025(a).

### B. Standard of Review

■ Prior to addressing the substantive issues raised by Plaintiffs, the court sets out the relevant standard of review for an agency's construction of the statute in question:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction of the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984) (footnotes omitted). When Congress fails to express its intent clearly, the agency's interpretation of a statute must be " 'rational and consistent with the statute.' " *Sullivan v. Everhart,* 494 U.S. 83, 89, 110 S.Ct. 960, 964, 108 L.Ed.2d 72 (1990) (quoting *NLRB v. United Food and Commercial Workers Union, Local 23, AFL–CIO,* 484 U.S. 112, 123,

**1484**

108 S.Ct. 413, 420, 98 L.Ed.2d 429 (1987)). Some deference must be given to an agency's reasonable interpretation of a statute. *National R.R. Passenger Corp. v. Boston & Maine Corp.,* 503 U.S. 407, 112 S.Ct. 1394, 118 L.Ed.2d 52 (1992); ·*Beef Nebraska, Inc. v. United States,* 807 F.2d 712, 716 (8th Cir.1986). However, "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." *Chevron,* 467 U.S. at 843 n. 9, 104 S.Ct. at 2781 n. 9 (citations omitted). The court needs to accord deference to an agency interpretation "only if the agency's interpretation has a reasonable basis in law and does not frustrate congressional policy." *Springdale Memorial Hosp. Ass'n, Inc. v. Bowen,* 818 F.2d 1377, 1380 (8th Cir.1987). The court's deference to an agency's interpretation of a statute "is constrained by [the court's] obligation to honor the clear meaning of [the] statute, as revealed by its language, purpose, and history." *International Bhd. of Teamsters v. Daniel,* 439 U.S. 551, 566 n. 20, 99 S.Ct. 790, 800 n. 20, 58 L.Ed.2d 808 (1979).

### C. Waiver Authority

■ In Count I, Plaintiffs assert that Defendants have violated the Due Process Clause of the Fourteenth Amendment through their efforts to collect food stamp overpayments that resulted from administrative error without first apprising them of the right to request a waiver of the overpayment. There is no dispute that the Secretary of Agriculture is vested with the authority to waive overpayments. *See* 7 U.S.C. § 2022(a)(1). It is also undisputed that under section 2022(a)(1), the Secretary of Agriculture may delegate such authority to state agencies. Section 2022(a)(1) states in relevant part:

> (1) The Secretary shall have the power to determine the amount of and settle and adjust any claim and to compromise or deny all or part of any such claim or claims arising under the provisions of this chapter or the regulations issued pursuant to this chapter, including, but not limited to, claims arising from fraudulent and nonfraudulent over issuances to recipients, including the power to waive claims if the

Secretary determines that to do so would serve the purposes of this chapter. *Such powers with respect to claims against recipients may be delegated by the Secretary to State agencies.*

7 U.S.C. § 2022(a)(1). Thus, § 2022 gives the Secretary the authority to delegate waiver and settlement powers to state agencies. However, the critical question here is whether the Secretary has indeed done so. To answer that question, the court turns to the agency regulations that have been promulgated to implement § 2022.

In 1978, the USDA promulgated 43 Federal Regulation 47883, which was codified at 7 C.F.R. § 271.4(b). Section 271.4(b) provides that:

> FSC delegates to the State agency, subject to the standard in § 273.18, the authority to determine the amount of, and settle, adjust, compromise or deny all or part of any claim which results from fraudulent or nonfraudulent over issuances to particular households.

7 C.F.R. § 271.4(b). It is at once apparent that section 271.4(b) does not contain the "power of waiver" language found in section 2022(a)(1). This was not an oversight in drafting. As originally enacted, § 2022 did not contain the waiver language found in it now. The language permitting waiver of overpayments was added by amendment in 1981. *See* Omnibus Budget Reconciliation Act of 1981, Pub.L. No. 97–35, § 113, 95 Stat. 357, 363 (1981). The companion regulation, 7 C.F.R. § 271.4(b), however, was not similarly amended by the Secretary of Agriculture following the 1981 amendment. The clear import of this inaction is that the Secretary of Agriculture has *not* delegated that department's waiver powers to the state agencies.

Defendants point out that John H. Knaus, Acting Director of the Program Accountability Division, has provided it with an interpretation of both § 2022(a) and 7 C.F.R. § 271.4(b). On behalf of the Secretary of Agriculture, Knaus concluded that state agencies do not possess authority to waive claims for overpayment of food stamps. Defendants argue that the Secretary of Agriculture's interpretation in 7 C.F.R. § 271.4(b) is

entitled to judicial deference, because it was issued with the requisite notice and comment period of the rulemaking provisions of the Administrative Procedure Act, 5 U.S.C. § 553, and thus constitutes a substantive or legislative rule.

The Eighth Circuit Court of Appeals has discussed the differences between interpretive rules and legislative rules:

> courts are in general agreement that interpretive rules simply state what the administrative agency thinks the statute means, and only "remind" affected parties of existing duties. In contrast, a substantive or legislative rule, pursuant to properly delegated authority, has the force of law, and creates new law or imposes new rights or duties.

*Northwest Nat'l Bank v. United States Dep't of Treasury,* 917 F.2d 1111, 1117 (8th Cir. 1990) (quoting *Jerri's Ceramic Arts, Inc. v. Consumer Prod. Safety Comm'n,* 874 F.2d 205, 207 (4th Cir.1989)); *see New York City Employees' Retirement Sys. v. S.E.C.,* 45 F.3d 7, 12 (2d Cir.1995); *Interport Pilots Agency, Inc. v. Sammis,* 14 F.3d 133, 142 n. 2 (2d Cir.1994). Section 271.4(b) clearly results from authority delegated by Congress and consequently constitutes a legislative rule. *Id.*

■ Furthermore, 7 C.F.R. § 271.4(b) unquestionably passes muster under the test of agency interpretations articulated by the Supreme Court in *Chevron, U.S.A., Inc.,* 467 U.S. at 843, 104 S.Ct. at 2781. *Chevron* specifies that an agency's interpretation of a statute in a legislative rule is binding on a court if the interpretation is a "permissible construction of the statute." *Id.* at 843, 104 S.Ct. at 2782. Section 271.4(b) was properly promulgated under the APA. Plaintiffs do not contend otherwise. Federal courts are bound by an agency's interpretation of its own legislative rule unless the interpretation is inconsistent with the legislative rule, violates the constitution or a federal statute, or is plainly erroneous. *See Stinson v. United States,* 508 U.S. 36, 45, 113 S.Ct. 1913, 1919, 123 L.Ed.2d 598 (1993); *Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 413–14, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945). The court does not find Knaus' interpretation to

suffer from any of these defects. Thus, the Secretary of Agriculture's interpretation is entitled to judicial deference here.

The court concludes that because 7 C.F.R. § 271.4(b) does not include a delegation of authority to waive claims for overpayment, Defendants were without authority to waive the food stamp overpayments made to Plaintiffs. Since Defendants lacked authority to waive the overpayments, they obviously were not required to provide Plaintiffs with notice of something which they had no authority to grant. Thus, there is no genuine issue as to any material fact and the Defendants are entitled to judgment as a matter of law. *Fed.R.Civ.P.* 56(c); *see also Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Beyerbach,* 49 F.3d at 1325; *Munz,* 28 F.3d at 798. Therefore, the court grants Defendants' motion for summary judgment as to that portion of Count I of the Complaint asserting an unconstitutional failure to provide notice of a right to seek waiver, and denies Plaintiffs' motion for summary judgment as to this same portion of Count I.

### D. Adequacy of the Notice as to Settlement, Adjustment, Compromise, and Denial

■ Although the court concludes that 7 C.F.R. § 271.4(b) does not include a delegation of authority to waive claims for overpayment, Defendants do not contend that they were without authority to settle, adjust, compromise, or deny the food stamp overpayments made to Plaintiffs. Since Defendants had authority to settle, adjust, compromise or deny the overpayments, the court must next address whether Defendants' failure to provide Plaintiffs with notice of this authority constituted a violation of due process.

#### 1. The Due Process analysis

■ The court notes that due process claims are generally subjected to a two-part analysis: (1) is the asserted interest protected by the due process clause; and (2) if so, what process is due. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428, 102 S.Ct. 1148, 1153, 71 L.Ed.2d 265 (1982); *Sanders v. Woodruff,* 908 F.2d 310, 312 (8th Cir.1990); *Tyler v. Black,* 811 F.2d 424, 427 (8th Cir.

1987), *adopted in relevant part,* 865 F.2d 181 (8th Cir.1987) (*en banc*), *cert. denied,* 490 U.S. 1027, 109 S.Ct. 1760, 104 L.Ed.2d 196 (1989); *see also Youakim v. McDonald,* 71 F.3d 1274, 1288 (7th Cir.1996) (two-step analysis of due process claim, citing *Logan*). In *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court wrote, "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews,* 424 U.S. at 332, 96 S.Ct. at 901; *see also Atkins,* 472 U.S. at 128 n. 31, 105 S.Ct. at 2528 n. 31 (quoting *Mathews*); *Jennings v. Lombardi,* 70 F.3d 994, 995 (8th Cir.1995) (Fourteenth Amendment prohibits government from depriving any person of property without due process of law, citing *Board of Regents v. Roth,* 408 U.S. 564, 576–77, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)); *Demming v. Housing and Redev. Auth.,* 66 F.3d 950, 953 (8th Cir.1995) (quoting *Mathews*). The possession of a protected life, liberty, or property interest is thus a "condition precedent" to the government's obligation to provide due process of law, and where no such interest exists, there is no due process violation. *Movers Warehouse, Inc. v. City of Little Canada,* 71 F.3d 716, 718 (8th Cir.1995); *Zenco Dev. Corp. v. City of Overland,* 843 F.2d 1117, 1118 (8th Cir.1988) ("A discussion of whether a party has a right to procedural due process must start with the question of whether the party has a property interest in the thing taken away.").

 Protected interests "are created and their dimensions are defined" not by the Constitution but by an independent source, such as state or federal law. *Movers Warehouse,* 71 F.3d at 718 (citing *Craft v. Wipf,* 836 F.2d 412, 416 (8th Cir.1987)); *Zenco Dev. Corp.,* 843 F.2d at 1118. When the assertedly protected interest is a grant of a benefit or privilege from the government, a person "must have more than a unilateral expectation of it. He [or she] must, instead, have a legitimate claim of entitlement to it." *Id.* (again citing *Craft,* which in turn quotes *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709);

*Zenco Dev. Corp.,* 843 F.2d at 1118 (also quoting *Roth*).

### 2. An appropriate interest

 The Supreme Court has already answered the question of whether food stamp benefits involve constitutionally protected property interests. In *Atkins,* the Court wrote,

> Food-stamp benefits, like the welfare benefits at issue in *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), "are a matter of statutory entitlement for persons qualified to receive them." *Id.,* at 262, 90 S.Ct., at 1017 (footnote omitted). Such entitlements are appropriately treated as a form of "property" protected by the Due Process Clause; accordingly, the procedures that are employed in determining whether an individual may continue to participate in the statutory program must comply with the commands of the Constitution. *Id.,* at 262–263, 90 S.Ct., at 1017–1018.

*Atkins,* 472 U.S. at 128, 105 S.Ct. at 2528; *see also Anderson v. Romero,* 72 F.3d 518 (7th Cir.1995) (entitlements confer property or liberty rights within the meaning of the due process clause). Thus, Plaintiffs' claim passes the first step in the due process analysis, because food stamps involve a constitutionally protected property interest.

### 3. What process is due?

The next step in the due process analysis is to ask what process is due in the present instance, *Sanders,* 908 F.2d at 312, or, to put it another way, what process is due in light of "the practicalities and peculiarities of the case"? *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950); *see also Zinermon v. Burch,* 494 U.S. 113, 127, 110 S.Ct. 975, 984, 108 L.Ed.2d 100 (1990) (due process is a "flexible concept"; its protections vary according to the demands of a particular set of circumstances); *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972); *Griffin–El v. Delo,* 34 F.3d 602, 605 (8th Cir.1994) (the extent of due process required depends upon particular interests affected, citing *Mathews,* 424 U.S. at 332–35,

96 S.Ct. at 901–03); *Birdsell v. Board of Fire and Police Comm'rs,* 854 F.2d 204, 207–09 (7th Cir.1988).

■■■ The process Plaintiffs claim they were due in this case is notice of a right to seek a settlement, adjustment, compromise, or denial of the overpayments they received. In *Mullane,* the Supreme Court declared,

An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is *notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.* The notice must be of such nature as reasonably to convey the required information ... and it must afford a reasonable time for those interested to make their appearance.... But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied.

*Mullane,* 339 U.S. at 314–15, 70 S.Ct. at 657 (citations omitted; emphasis added). Indeed, the Supreme Court and other courts have recognized that "[t]he essential requirements of due process ... are *notice* and an opportunity to respond" before adverse action is taken. *Mathews,* 424 U.S. at 335, 96 S.Ct. at 903 (emphasis added); *Demming,* 66 F.3d at 953 (quoting *Mathews*). Without notice, a party cannot take advantage of " '[t]he fundamental requirement of due process [which] is the *opportunity* to be heard "at a meaningful time and in a meaningful manner." ' " *Hroch v. City of Omaha,* 4 F.3d

693, 696 (8th Cir.1993) (quoting *Mathews,* 424 U.S. at 333, 96 S.Ct. at 902, with emphasis added by the court of appeals). Thus, prior to deprivation of life, liberty or property, due process requires that a governmental entity must provide a citizen with adequate notice, *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), as well as ample opportunity to be heard at a meaningful time and in a meaningful manner appropriate to the nature of the case. *Mathews,* 424 U.S. at 333, 96 S.Ct. at 902; *Mullane,* 339 U.S. at 313, 70 S.Ct. at 656.

### a. The Mathews test

In *Mathews,* the Supreme Court applied a three-factor test to determine whether the plaintiff had received all the process he was due under the Due Process Clause in the context of a challenge to hearing procedures:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews,* 424 U.S. at 335, 96 S.Ct. at 903; *accord Zinermon,* 494 U.S. at 127, 110 S.Ct. at 984; *Cleveland Bd. of Education v. Loudermill,* 470 U.S. 532, 542–43, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985).[7] The Court has also applied the *Mathews* balancing test to the adequacy of notice. *See Memphis Light,*

---

7. The Court in *Mathews* reversed the conclusion of the district court and the court of appeals that the Social Security Administration's termination of the plaintiff's social security disability benefits required an evidentiary hearing. The Court concluded that the extensive procedures guaranteed to the plaintiff by the Social Security Act and the Social Security Administration's regulations satisfied the government's constitutional obligations, notwithstanding the lack of an evidentiary hearing. *Mathews,* 424 U.S. at 335–49, 96 S.Ct. at 903–10. Among the existing statutory and regulatory pre-termination safeguards that the Court considered significant were: an established audit procedure to determine continued eligibility for disability benefits, *id.* at 337, 96 S.Ct. at 904; letter communication, including a

detailed questionnaire, and occasional telephone contact with all recipients prior to interruption of benefits, *id.;* a recipient's right to review his file and respond to preliminary adverse determinations, *id.* at 338, 96 S.Ct. at 904; and, finally, a two-months' continuation of benefits after the determination of ineligibility. *Id.* In glaring contrast to the comprehensive pre-termination safeguards afforded in *Mathews,* members of the class here were not provided with notice nor explanation of the DHS's authority to settle, adjust, compromise, or deny all or part of any claim which results from overissuances. Such information would be crucial if food stamp recipients were to seek to have the DHS settle, adjust, compromise, or deny all or part of the overissuances of food stamp benefits.

*Gas and Water Div. v. Craft*, 436 U.S. 1, 14 & n. 15, 98 S.Ct. 1554, 1563 & n. 15, 56 L.Ed.2d 30 (1978) (holding that its "flexible" approach to due process, taking account of private interests, the potential for reducing erroneous deprivations and the costs of procedures needed to reduce errors, applies to evaluations of notice as well as the procedures at a hearing); *Goss v. Lopez*, 419 U.S. 565, 579, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975) (these interests are relevant to determining the "content of the notice" as well as its timing and other procedural claims); *see also Birdsell*, 854 F.2d at 207 (*Mathews* test applies to adequacy of notice as well as to adequacy of hearings).

■■■ Adequate notice apprises the individual of the proceeding, permits adequate preparation to present objections, and requires a balancing of interests.[8] *See Craft*, 436 U.S. at 13, 98 S.Ct. at 1562; *see also Tulsa Professional Collection Servs., Inc. v. Pope*, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988) (sufficiency of notice requires balancing of state and individual interests); *Mullane*, 339 U.S. at 313–14, 70 S.Ct. at 656–57 (balancing state's interest in reducing costs of notice to beneficiaries of jointly managed trusts against beneficiaries' "right to be heard"); *Birdsell*, 854 F.2d at 207–08 (inaccurate nature of termination hearings outweighs any slight benefits accruing to City); *Wilson v. Health & Hosp. Corp.*, 620 F.2d 1201, 1214 (7th Cir.1980) ("elements to be included in the notice are to be tailored to the circumstances of the case and depend upon an appropriate accommodation of the competing private and governmental interests").

As noted above, in *Mathews*, the Supreme Court set forth three factors that should be considered by any court determining whether procedures satisfy due process. *Mathews*, 424 U.S. at 335, 96 S.Ct. at 903. The court will address each of these three *Mathews* factors seriatim.[9]

*i. The private interest.* The private interest at stake in this case is extremely significant. Food is a necessity of life. The food stamp program considers the recipient's income, allowable deductions, and the household composition to calculate the precise amount of benefits a household needs in order to purchase a minimally adequate supply of food. 7 U.S.C. §§ 2014 & 2017(a); *see also Atkins*, 472 U.S. at 117–18, 105 S.Ct. at 2522–23 (eligibility calculations); *West*, 879 F.2d at 1124 (same). Accurate calculations therefore enable persons on the "margin of subsistence," *Mathews*, 424 U.S. at 340, 96 S.Ct. at 905, to obtain and maintain a minimally adequate diet.

By definition, a miscalculation involving any one of these factors, or any reduction in the food stamps allocated for any other reason, such as recoupment of overpayments,[10]

---

8. In *Craft*, the Court ruled that the notice a power company provided customers before it turned off their service was insufficient for purposes of due process. The notice made no mention "of a procedure for the disposition of a disputed claim." *Craft*, 436 U.S. at 13, 98 S.Ct. at 1562. The Supreme Court held that due process required that notice of a proposed utility service cut-off advise consumers of administrative procedures for contesting such decisions. Without information about remedies, any notice would not be "reasonably calculated to inform [plaintiffs] of the availability of 'an opportunity to present their objections'" to the proposed action. "The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending 'hearing.'" *Id.* at 14, 98 S.Ct. at 1563. The Court went on to state that

notice is given to thousands of customers of various levels of education, experience, and resources. Lay consumers of electric service, the uninterrupted continuity of which is essential to health and safety, should be informed

clearly of the availability of an opportunity to present their complaint. In essence, recipients of a cutoff notice should be told where, during which hours of the day, and before whom disputed bills appropriately may be considered.

*Id.* at 15 n. 15, 98 S.Ct. at 1563 n. 15.

9. Neither party has addressed either the applicability of the *Mathews* test nor the application of the three *Mathews* factors to the facts of this case. Indeed, neither party even cited *Mathews* in their respective briefs.

10. Realistically, recoupment of overpayment does not "even things out," because, when food stamps are intended to provide marginally adequate coverage, a temporary reduction, even for "recoupment," is a reduction below the marginally adequate level and any "overpayment" is unlikely to have been banked for the unanticipated later reduction resulting from administrative error.

can result in a household receiving fewer food stamps than has been determined to be minimally adequate. As the district court stated in *Willis v. Lascaris*, 499 F.Supp. 749 (N.D.N.Y.1980):

> [T]here can be no doubt that even the slightest change in a household's food stamp allotment threatens the well-being and the dignity of its members.

*Id.* at 756; *see also Goldberg*, 397 U.S. at 266, 90 S.Ct. at 1019; *Lyons v. Weinberger*, 376 F.Supp. 248, 262–63 (S.D.N.Y.1974). A household's interest in its own survival is not an isolated concern, but is an important concern of our society as a whole. As Justice Brennan pointedly wrote for the Court over a quarter of a century ago:

> From its founding the Nation's basic commitment has been to foster the dignity and well-being of all persons within its borders. We have come to recognize that forces not within the control of the poor contribute to their poverty. This perception, against the background of our traditions, has significantly influenced the development of the contemporary public assistance system. Welfare, by meeting the basic demands of subsistence, can help bring within the reach of the poor the same opportunities that are available to others to participate meaningfully in the life of the community. At the same time, welfare guards against the societal malaise that may flow from a widespread sense of unjustified frustration and insecurity. Public assistance, then, is not mere charity, but a means to "promote the general Welfare, and secure the Blessings of Liberty to ourselves and our Posterity."

*Goldberg*, 397 U.S. at 265, 90 S.Ct. at 1019 (footnote omitted).

The record here persuasively demonstrates that the abstract statements of private interest discussed above apply with full force to the facts of this case. Both of the named Plaintiffs' households lost monthly food stamp benefits. Although the range of benefit loss for Plaintiffs was not large by most standards, "[e]ven a slight change in food stamp allotments effects [sic] a public assistance household's ability to procure the necessities of life." *Willis*, 499 F.Supp. at

759. The loss of such food stamp benefits opens the possibility that the recipients of food stamps would be forced to exist at a subpoverty level.

***ii. Risks of erroneous deprivation.*** The court further concludes that not only is any deprivation, let alone an erroneous one, likely to impose severe consequences on Iowa food stamp recipients, but also the risk of such an erroneous deprivation is extremely high in the food stamp context. Courts have consistently required detailed advance notice of food stamp terminations and/or reductions "[b]ecause the calculation of food stamp benefits under the income method requires an individualized determination of income, expenses and deductions for each recipient," thereby creating substantial risks of erroneous deprivations. *Banks v. Trainor*, 525 F.2d 837, 842 (7th Cir.1975), *cert. denied*, 424 U.S. 978, 96 S.Ct. 1484, 47 L.Ed.2d 748 (1976); *see Willis*, 499 F.Supp. at 757.

Again, the particularized facts of this case provide a concrete illustration of the abstract principles of law applied by other courts. The record shows that under current law, food stamp recipients who have received an overpayment of benefits due to no fault of their own, but because of agency error, find themselves facing either a reduction in their food stamp benefits or a loss of their income tax return regardless of their level of need. Because a recoupment of overpayments may impose such a hardship, the determination of how and to what extent the recoupment is to be made without consideration of statutorily authorized alternatives such as settlement, adjustment, compromise, or denial, increases the risk that an erroneous determination will be made.

Similarly, the risk of erroneous deprivation of benefits, although substantial in any food stamp determination, is increased by the lack of adequate notice in this case. Providing specific information on the notice (that is, notice of the DHS's authority to settle, adjust, compromise, or deny all or part of any claim which results from over issuances) would allow food stamp recipients to seek from the DHS such modifications of the extent and methods of recoupment. Absent such notice, individuals who are by definition

below the poverty line are faced with the Hobbesian choice between possible destitution or incurring the wrath of the governmental agency that oversees the very program which provides their sustenance. It is particularly troubling that the group most likely to suffer from an erroneous deprivation of benefits is that group of food stamp recipients most in need of that aid: it is that group for which settlement of overissuance claims by the DHS would most likely serve the ultimate purposes of the food stamp program.

***iii. The governmental interest.*** Defendants have not asserted what, if any, governmental interests are furthered in withholding from food stamp recipients adequate notice of the DHS's authority to settle, adjust, compromise, or deny all or part of any claim which results from overissuances. Although the court is cognizant that the governmental interest "in conserving scarce fiscal and administrative resources ... is a factor that must be weighed," *Mathews,* 424 U.S. at 348, 96 S.Ct. at 909, administrative convenience "is not a controlling weight in determining whether due process requires a particular procedural safeguard." *Id.* Additionally, the Court has indicated that the administrative burden is "not overriding in the welfare context." *Goldberg,* 397 U.S. at 266, 90 S.Ct. at 1019. Thus, the court is forced to conclude that the government's interest in this case must be viewed as negligible.[11] As the court in *Willis* stated forcefully:

> [T]he Court does not discern any real hardship to defendant in requiring him to send out more informative notices of reductions of food stamps. If plaintiffs were given an adequate notice in the first instance, it is quite possible that defendant could have handled questions or objections from food stamp recipients in a more orderly fashion.

*Willis,* 499 F.Supp. at 759.

Finally, to the extent the government is concerned that this court's decision will re- quire them to pay nonrecoverable excess benefits to food stamp recipients, the court fully subscribes to the view of Justice Brennan in *Goldberg* that "the State is not without weapons to minimize these increased costs. Much of the drain on fiscal and administrative resources can be reduced by developing procedures ... and by skillful use of personnel and facilities." *Goldberg,* 397 U.S. at 266, 90 S.Ct. at 1019.

#### b. Balancing of the Mathews factors

Upon balancing the three *Mathews* factors, the court concludes that the harm to Plaintiffs is substantial, that there is a high risk of erroneous deprivation of food stamp benefits, that this risk is exacerbated by the lack of notice of compromise procedures, and that the governmental interest in refusing to give any notice of settlement, adjustment, or compromise procedures is, at best, minimal. Recognizing that "[d]ue process is flexible and calls for such procedural protections as the particular situation demands," *Mathews,* 424 U.S. at 334, 96 S.Ct. at 902, the court holds that, in this context, the Due Process Clause requires a complete explanation of the DHS's authority to settle, adjust, compromise, or deny all or part of any claim which results from overissuances, such that recipients of food stamp overpayments could seek from the DHS a settlement, adjustment, compromise, or denial in their individual cases. *See Craft,* 436 U.S. at 14 n. 15, 98 S.Ct. at 1563 n. 15 (noting the diverse educational backgrounds of lay consumers of electrical power, and holding that "recipients of a cutoff notice should be told where, during which hours of the day, and before whom disputed bills appropriately may be considered."); *see also Greenfield v. Villager Indus., Inc.,* 483 F.2d 824, 834 (3d Cir.1973) ("just as a hearing which does not afford a meaningful opportunity to be heard may be as fatal to due process as a denial of any hearing at all, so too constitutionally mandated notice which is inadequate under the cir-

---

**11.** Although the DHS did not argue an interest in recoupment of overpayments as the result of federal statutory requirements imposing on states the duty to recover such overpayments, the court recognizes that such an interest is not insignificant. However, that interest in fulfilling a statu- tory obligation to recover overpayments is not directly impinged by giving recipients of overpayments notice of the DHS's authority to settle, adjust, compromise, or deny an overpayment and an opportunity to request such action.

cumstances may be as fatal to due process as no notice at all").

In a related context, courts have required notification not only of the procedures but of the defenses available to a judgment debtor. See *Finberg v. Sullivan,* 634 F.2d 50, 62 (3d Cir.1980); *see also Deary v. Guardian Loan Co., Inc.,* 534 F.Supp. 1178, 1187 (S.D.N.Y. 1982). In *Finberg,* a judgment debtor whose sole source of income was her social security benefits contested execution of a judgment by a judgment creditor. *Finberg,* 634 F.2d at 52. Even though the debtor had been afforded an opportunity to challenge the underlying debt, she was given inadequate notice of the enforcement of the judgment against particular property. *Id.* at 61–62. The court held that due process under the circumstances requires notice both of the exemptions to which the debtor may be entitled and of the procedures for asserting those exemptions. *Id.* at 62. The procedural protections available before the original judgment on the debts was entered were held to be an insufficient substitute for the constitutionally required procedures at the time of execution upon that judgment when the debtor may assert new defenses. *Id.* As the court noted,

> In this case, Mrs. Finberg was not informed of either the exemption for social security benefits, or the $300 exemption under Pennsylvania law. As we noted earlier, both of these exemptions are designed to protect a debtor's means of purchasing basic necessities. In a case involving an attempt to garnish an individual debtor's bank accounts, notice that informs the debtor of the exemption under federal law for social security benefits, of the existence of the $300 exemption under Pennsylvania law, and of the procedure for claiming these exemptions would provide substantial protection to the debtor's interest in having funds available for basic necessities. Knowledge of these exemptions is not widespread, and a judgment debtor may not be able to consult a lawyer before the freeze on a bank account begins to cause serious hardships. These problems are probably most acute for those judgment debtors who have few immediate sources of necessary funds other than money held

in a bank account. Notice of these matters can prevent serious, undue hardship for the judgment debtor whose lack of information otherwise would cause delay or neglect in filing a claim of exemption.

*Id.*

Like the notice given the judgment debtors in *Finberg,* the notice afforded Plaintiffs here did not apprise the Plaintiffs of the DHS's authority to settle, adjust, compromise, or deny all or part of any claim which results from over issuances. Absent such notice, it is highly unlikely that food stamp recipients would have knowledge of such authority. *Cf. Finberg,* 634 F.2d at 62. Notice of this authority can prevent serious, undue hardship for food stamp recipients whose lack of knowledge regarding this authority otherwise would deny them the opportunity to seek from the DHS a settlement, adjustment, compromise, or denial of all or part of the overissuances of food stamp benefits to them.

This case is not like *Atkins* or *Logan,* in which the Supreme Court concluded that " 'a welfare recipient is not deprived of due process when the *legislature* adjusts benefit levels … [T]he *legislative* determination provides all the process that is due.' " *Atkins,* 472 U.S. at 129–30, 105 S.Ct. at 2529 (quoting *Logan,* 455 U.S. at 432–33, 102 S.Ct. at 1156; emphasis added); *see also Slaughter v. Levine,* 855 F.2d 553, 554 (8th Cir.1988) (per curiam) (quoting *Atkins* ); *Gattis v. Gravett,* 806 F.2d 778, 780 (8th Cir.1986) (also quoting *Atkins* and concluding that property interests created by the legislature can be extinguished by the legislature). Here, the adjustment is being made by the administrator with no notice and without an opportunity to be heard on whether instead of recouping the entire amount of the overpayments, the administrator should adjust, settle, compromise, or deny the overpayment. It is not simply the absence of notice that weighs against the adequacy of the process provided here, but the absence of " '[t]he fundamental requirement of due process [which] is the *opportunity* to be heard "at a meaningful time and in a meaningful manner." ' " *Hroch,* 4 F.3d at 696 (quoting *Mathews,* 424

U.S. at 333, 96 S.Ct. at 902). Although adequate due process does no more than secure an opportunity to be heard, not a guarantee or probability of success, *Boner v. Eminence R–1 Sch. Dist.*, 55 F.3d 1339, 1342 (8th Cir. 1995); *Bender v. City of St. Ann*, 36 F.3d 57, 59 (8th Cir.1994), Plaintiffs here were deprived of even that opportunity. At a minimum, the process due in the circumstances of this case, *Zinermon*, 494 U.S. at 127, 110 S.Ct. at 984; *Mullane*, 339 U.S. at 314, 70 S.Ct. at 657, includes notice of the DHS's authority to make a settlement, adjustment, compromise, or denial of the overpayment and an opportunity to request such a course.

Finally, the balance in favor of a due process requirement of notice in this case is in keeping with this nation's basic commitment to fostering the dignity and well-being of all persons within its borders. *Goldberg*, 397 U.S. at 265, 90 S.Ct. at 1019. Food stamps, as part of the welfare system, help meet the basic demands of subsistence, and can help bring within the reach of the recipients the same opportunities that are available to others to participate meaningfully in the life of the community. *Id.* While notice may do much to "promote the general Welfare, and secure the Blessings of Liberty to ourselves and our Posterity," by providing recipients of overpayments with the opportunity to prevent the hardships imposed by full recoupment, *id.*, denial of that notice serves no such important and beneficial purpose.

Thus, there is no genuine issue as to any material fact and the Plaintiffs are entitled to judgment as a matter of law. *Fed.R.Civ.P.* 56(c); *see also Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Beyerbach*, 49 F.3d at 1325; *Munz*, 28 F.3d at 798. Therefore, upon the balancing of interests mandated by *Mathews*, the court grants Plaintiffs' motion for summary judgment as to this portion of Count I of the Complaint, and denies Defendants' motion for summary judgment as to the same portion.

12. Although administered by the States, food stamp coupons are deemed obligations of the United States. *See* 7 U.S.C. section 2024(d).

### E. Equitable Estoppel

█ In count II of the Complaint, Plaintiffs assert that Defendants should be equitably estopped from seeking to collect food stamp overpayments that have occurred as a result of agency error. The Eighth Circuit "ha[s] recognized that 'estoppel is an equitable doctrine, and it should not be given effect beyond what is necessary to accomplish justice between the parties.'" *Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist., No. 1*, 56 F.3d 904, 914 (8th Cir.1995) (quoting *Maitland v. University of Minnesota*, 43 F.3d 357, 364 (8th Cir.1994)).

█ Under the Food Stamp Program, the Secretary of Agriculture delegates to the States the authority to handle claims related to overpayments. 7 U.S.C. § 2022; 7 C.F.R. § 271.4(b). Thus, in this limited capacity, the States act as the agent of the United States.[12] The federal doctrine of equitable estoppel is applicable to actions brought in federal courts at law and equity. *See Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231, 232–33, 79 S.Ct. 760, 761–62, 3 L.Ed.2d 770 (1959); *Smith v. City of Chicago Heights*, 951 F.2d 834, 841 (7th Cir.1992); *Cange v. Stotler and Co., Inc.*, 826 F.2d 581, 585 (7th Cir. 1987); *see, e.g., Heckler v. Community Health Servs.*, 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984); *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946) (Frankfurter, J.).[13]

█ In order to prevail on a traditional equitable estoppel theory, a party must prove that the party misrepresented a material fact and that the other party reasonably relied on that misrepresentation to its detriment. *Monongahela Valley Hosp., Inc. v. Sullivan*, 945 F.2d 576, 589 (3d Cir.1991). The Supreme Court has made clear, however, that the government may not be estopped on the same terms as other litigants. *Office of Personnel Management v. Richmond*, 496 U.S. 414, 419, 110 S.Ct. 2465, 2468, 110 L.Ed.2d 387 (1990). Indeed, although the Supreme Court has not adopted a categorical

13. Plaintiffs have directed the court to Iowa case law regarding the doctrine of equitable estoppel. Iowa law, however, is not controlling here. Instead, the court must look to federal law.

rule that equitable estoppel may not be used against the United States Government under any circumstances, it has come close. The Court expressly noted that it has reversed every case it has reviewed in which a lower court has applied equitable estoppel against the government. *Id.* at 422, 110 S.Ct. at 2470. Nevertheless, to the extent that equitable estoppel is viable against the government, when estoppel is asserted, the party must prove, in addition to a material misrepresentation, affirmative misconduct by the government. *See Heckler v. Community Health Servs. of Crawford,* 467 U.S. 51, 59–60, 104 S.Ct. 2218, 2223–24, 81 L.Ed.2d 42 (1984); *Immigration & Naturalization Serv. v. Miranda,* 459 U.S. 14, 17, 103 S.Ct. 281, 282, 74 L.Ed.2d 12 (1982); *McDermott v. United States,* 760 F.2d 879, 882 (8th Cir. 1985); *United States v. Manning,* 787 F.2d 431, 436 (8th Cir.1986); *Free Enterprise Canoe Renters Ass'n v. Watt,* 711 F.2d 852, 857 (8th Cir.1983); *SIU de Puerto Rico v. Virgin Islands Port Auth.,* 42 F.3d 801, 803–04 (3d Cir.1994).

The court finds no evidence in the record of this case that supports a finding of material misrepresentation by Defendants. Although the food stamp overpayments to Plaintiffs were the result of agency error, Plaintiffs have not shown that these agency actions resulted from a material misrepresentation. Thus, in summary, Plaintiffs have failed to place on the record evidence that the Defendants have engaged in any material misrepresentation in regard to this matter. Therefore, Plaintiffs may not prevail on their equitable estoppel claim against the Defendants in this case. There is no genuine issue as to any material fact and the Defendants are entitled to judgment as a matter of law. *Fed.R.Civ.P.* 56(c); *see also Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Beyerbach,* 49 F.3d at 1325; *Munz,* 28 F.3d at 798. Thus, Defendants' motion for summary judgment is granted as to Count II of the Complaint and Plaintiffs' motion for summary judgment is denied as to Count II.

### F. Permanent Injunction

■ Because the court concludes that Defendants are violating Plaintiffs' rights to due process by failing to notify them of the DHS's authority to settle, adjust, compromise, or deny overpayments and the right to seek such settlement, adjustment, compromise, or denial, the court issues the following permanent injunction in this case. Defendants are **enjoined** from initiating or continuing, either directly or indirectly, by any means, any collection efforts to collect food stamp overpayments from the class members where those overpayments are the result of agency error until Defendants provide notice by personal service to the class members of their statutory rights to request a settlement, adjustment, compromise, or denial of all or part of overpayments received as a result of agency error. Where overpayments have already been recovered, immediate refund is not required, but future recoupment is prohibited until the notice has been afforded the class members. The parties shall have **fourteen (14) days** from the date of this order in which to come to agreement on the notice to be provided class members. The parties shall submit to the court for the court's approval the text of any notice upon which they have agreed. If the parties are unable to reach an accord as to the notice within the time frame set out above, each party shall submit a proposed notice to the court along with a supporting memorandum.

This order shall be binding upon the parties to this action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order.

### V. CONCLUSION

The court concludes that 7 C.F.R. § 271.4(b) does not include a delegation of authority to state agencies to waive claims for overpayment. Thus, Defendants lacked authority to waive overpayments, and consequently were not required to provide Plaintiffs with notice of the right to seek a waiver. Therefore, the court **grants** Defendants' motion for summary judgment as to this portion of Count I of the Complaint, and **denies** Plaintiffs' motion for summary judgment as to this portion of Count I.

As to the remaining portion of Count I, upon balancing the three *Mathews* factors, the court concludes that the harm to Plaintiffs is substantial, that there is a high risk of erroneous deprivation of food stamp benefits, that this risk is exacerbated by the lack of notice by the Defendants of the DHS's authority to settle or otherwise modify claims, and that the governmental interest in such a procedure is, at best, minimal. Thus, the court holds that, in this context, the Due Process Clause requires a complete explanation of the DHS's authority to settle, adjust, compromise, or deny all or part of any claim that results from overissuances such as would allow food stamp recipients to seek to have the DHS settle, adjust, compromise, or deny all or part of the overissuances of food stamp benefits. Therefore, the court **grants** Plaintiffs' motion for summary judgment as to the portion of Count I of the Complaint asserting a due process violation in failure to notify recipients of overpayments of the DHS's authority to settle or otherwise modify claims for overpayments. The court **denies** Defendants' motion for summary judgment as to this same portion of Count I.

As to Count II, the court finds no evidence in the record that supports a finding of material misrepresentation by Defendants. Therefore, Plaintiffs may not prevail on their equitable estoppel claim against Defendants in this case. Thus, Defendants' motion for summary judgment is also **granted** as to Count II of the Complaint and Plaintiffs' motion is **denied** as to that count.

The entry of final judgment pursuant to this order, entering summary judgment in favor of Plaintiffs and against Defendants as to that portion of Count I of the Complaint in which Plaintiffs contend that the Due Process Clause requires that the notice received by them contain a complete explanation of the DHS's authority to settle, adjust, compromise or deny all or part of any claim which results from overissuances, and denying the cross-motions for summary judgment in all other respects, is **deferred** until such time as the court approves or otherwise enters an order stating the terms of the notice Defendants are required to give Plaintiffs.

A **permanent injunction** in the terms stated herein shall issue immediately.

**IT IS SO ORDERED.**