_____

Nos. 96-1466/1991
_____

EVELYN BLIEK, Individually and          *
on behalf of all other persons          *
similarly situated; TISH                *
EBERLINE, Individually and on           *
behalf of all other persons             *
similarly situated,                     *
                                        *
        Plaintiffs - Appellees,         *   Appeals from the United States
                                        *   District Court for the
        v.                              *   Northern District of Iowa.
                                        *
CHARLES M. PALMER, In his               *
official capacity as the                *
Director of the Iowa Department         *
of Human Services; KIM D.               *
SCHMETT, In his capacity                *
as Acting Director of                   *
the Iowa Department of                  *
Inspections and Appeals,                *
                                        *
        Defendants - Appellants.        *

_____

Submitted: June 12, 1996

Filed: January 2, 1997
_____

Before BEAM, HEANEY, and HANSEN, Circuit Judges.
_____

HANSEN, Circuit Judge.

     Evelyn Bliek and Tish Eberline filed this class action suit pursuant to 42 U.S.C. § 1983, seeking injunctive and declaratory relief. The plaintiffs contended, among other things, that the defendants violated the plaintiffs' due process rights by failing to notify them of the state's discretionary authority to settle, adjust, compromise, or deny claims arising out of overissuances of

food stamps due solely to agency error. The district court[1] granted the plaintiffs' motion for summary judgment and permanently enjoined the defendants from initiating or continuing efforts to collect food stamp overpayments issued as a result of agency error until the defendants provided notice to the plaintiffs of the state's settlement authority. The court gave the parties fourteen days in which to file a report in which they agreed to the terms of the notice to be provided to the class members.

Defendants filed a notice of appeal and a motion to stay the permanent injunction pending the appeal. We granted the defendants' motion in part, staying all of the injunction except the portion requiring the parties to submit for the district court's approval a report agreeing to the terms of the notice. The parties subsequently submitted an agreed-upon form of notice to the district court, and the court approved it and entered a final judgment in the case. We affirm the judgment of the court and lift the stay we previously imposed.

## I.

The named plaintiffs in this case, Evelyn Bliek and Tish Eberline, both receive food stamps pursuant to the Food Stamp Act of 1977 (the Act), 7 U.S.C. §§ 2011-2032 (1994). Solely as a result of mistakes made by the State of Iowa, and unbeknownst to them, Bliek and Eberline were issued more food stamps than they were entitled to receive under the Act. Upon discovering this "agency error," the defendants initiated collection of the food stamp overpayments by sending each of the plaintiffs a "demand letter," as prescribed by federal regulations promulgated under the Act. See 7 C.F.R. § 273.18(d)(3) (1995). The demand letters informed the plaintiffs of the alleged overissuances and gave the

---

[1]The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa.

2

plaintiffs notice of their administrative appeal rights as to the amount of overissuances. The letters did not specifically inform the plaintiffs that the state has discretionary settlement authority to settle, adjust, compromise or deny recovery of all or part of the overpayments, even though a section of the notice headed "Actions That May Be Taken On Overpayments" listed every adverse action that could be taken, including criminal prosecution and the filing of a civil suit. (See Appellants' App. at 119.)

The plaintiffs filed this cause of action pursuant to 42 U.S.C. § 1983, individually and on behalf of others similarly situated, challenging the state's policies regarding the collection of overissuances. The district court certified the class action, describing the class as "all individuals residing in the State of Iowa who have participated in the food stamp program in the State of Iowa, who have been determined to have received an overpayment of food stamp benefits as a result of agency error, and who have been subjected to collection efforts based on such overpayments since September 28, 1991." Bliek v. Palmer, 916 F. Supp. 1475, 1478 n.1 (N.D. Iowa 1996). The plaintiffs and the defendants both filed motions for summary judgment. Finding no genuine issues of material fact, the district court rendered an opinion deciding the issues of law, and as relevant here, granted plaintiffs' motion for summary judgment on their procedural due process argument regarding the state's failure to notify the plaintiffs of its settlement authority. Id. at 1485-93. The defendants appeal.

## II.

The Food Stamp Act establishes a federally funded, state-administered program that provides nutritional assistance to eligible households. 7 U.S.C. § 2013(a) (1994). The purpose of the Act is "to safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households." Id. § 2011. Under the food stamp program, eligible

3

households receive food stamp coupons that can be redeemed for food items at retail stores participating in the program. Id. § 2013(a); see also id. §§ 2014-2015 (setting standards for determining eligibility of households).

The Secretary of Agriculture (the Secretary) is authorized to formulate and administer the food stamp program, id. § 2013(a), and to that end has promulgated various regulations, which are set forth at 7 C.F.R. §§ 271.1 - 285.10 (1995).[2] The Secretary has delegated to state agencies the responsibility for administering the program, and thus the state agencies make the individual eligibility determinations and actually distribute the food stamps to the eligible households. 7 C.F.R. § 271.4(a). The State of Iowa participates in the food stamp program and has designated the Iowa Department of Human Services (DHS) as the state agency that implements the program. Iowa Code Ann. § 234.12 (1994).

If a household is issued more food stamps than it is entitled to receive, the adult household members are liable for the value of the overissuances. 7 C.F.R. § 273.18. In such a case, the Secretary has the authority to establish a claim against those individuals. 7 U.S.C. § 2022(a)(1). The Secretary also has plenary settlement authority regarding overissuance claims -- that is, "the power to determine the amount of and settle and adjust any claim and to compromise or deny all or part of any such claim or claims arising under [the Act]." Id.

The Secretary has delegated much of his power regarding claims, including the settlement authority, to state agencies. 7 C.F.R. § 271.4(b). Accordingly, state agencies "shall establish a claim against any household that has received more food stamp

---

[2]Currently, the Food and Consumer Service (FCS) of the United States Department of Agriculture (USDA) acts on the Secretary's behalf in overseeing the program. See 7 C.F.R. § 271.3(a).

4

benefits than it is entitled to receive . . . ."  Id. § 273.18(a).

When a state agency (in Iowa, the DHS) determines that a household has received too many food stamps as a result of agency error, the agency initiates a collection action by sending the household a demand letter. Id. § 273.18(d)(3)(i).  The letter that DHS sends out informs the recipient of the amount of the alleged overissuances and provides a space for the recipient to indicate the recipient's preferred method of repayment. Although the letter informs the recipient of his or her right to appeal the agency's determination and the possibility of a fair hearing on the appeal, see id. § 273.15 (fair hearings), it does not inform the recipient of the state agency's settlement authority.  In fact, the present form of notice states in large block letters "FEDERAL RULES REQUIRE THAT THE IOWA DEPARTMENT OF HUMAN SERVICES COLLECT ALL OVERPAYMENTS," without explaining that those same federal rules give the DHS authority to settle and compromise an overpayment claim.  (Appellants' App. at 119.)

## III.

The district court granted plaintiffs' motion for summary judgment, finding they have been denied procedural due process because the state has failed to inform them of its settlement authority.  We review a grant of summary judgment de novo, using the same standards as did the district court.  Dakota Gasification Co. v. Pascoe Bldg. Sys., 91 F.3d 1094, 1097 (8th Cir. 1996).  Thus, we will affirm the grant of summary judgment if the record shows there is no genuine issue of material fact and the prevailing party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c); Dakota Gasification Co., 91 F.3d at 1097.

The Due Process Clause of the Fourteenth Amendment guarantees that no state will "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV,

5

§ 1.  We engage in a two-part analysis when addressing a procedural due process argument, asking, first, whether the plaintiffs have a protected interest at stake, and if so, what process is due.  Schneider v. United States, 27 F.3d 1327, 1333 (8th Cir. 1994), cert. denied, 115 S. Ct. 723 (1995).  The state concedes the first point of the analysis, stating:

> Iowa agrees that Food Stamp recipients have a property interest protected by the Fourteenth Amendment in the Food Stamp coupons and in the cash equivalent that Iowa would attempt to collect as repayment of an overissuance of Food Stamps due to agency error.  Iowa disagrees with the District Court's conclusion that the Due Process Clause requires more process.

(Appellants' Br. at 19.)

For the most part, the Supreme Court provided the answer to our second inquiry in Goldberg v. Kelly, 397 U.S. 254 (1970).  There, the Court held that welfare benefits "are a matter of statutory entitlement for persons qualified to receive them" and thus are a constitutionally protected property interest.  Id. at 262.  Further, because the welfare recipients in Goldberg relied on the benefits for subsistence, the Court held that the recipients were entitled under the Due Process Clause to a fair hearing before the termination of the benefits.  Id. at 264.  In Atkins v. Parker, the Court eliminated any doubt one might have about the application of Goldberg holdings to food stamp benefits, noting that food stamps are a matter of statutory entitlement, just as welfare benefits are.[3]  472 U.S. 115, 128 (1985).  Supreme Court precedent

---

[3]We note that the plaintiffs do not have a protected property interest in the actual overissuances of food stamps, because the protected property interest is only in the benefits the recipient is "qualified to receive."  Atkins v. Parker, 472 U.S. 115, 128 (1985).  Likewise, there is no protected property interest in the plaintiffs' expectation of a settlement or an adjustment by the state, for the state's settlement authority for its claim is purely discretionary and gratuitous.  See Schneider, 27 F.3d at 1333.

6

dictates that due process includes notice and a fair hearing. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Cf. H.R. Rep. No. 464, 95th Cong., 1st Sess. 285, reprinted in 1977 U.S.C.C.A.N. 1978 (stating the "fair hearing" rules for food stamp recipients were implemented in response to Goldberg v. Kelly, 397 U.S. 254 (1970)).

In determining what process is due in this circumstance, we note that the need for an adequate notice is also settled law. Adequate notice is integral to the due process right to a fair hearing, for the "right to be heard has little reality or worth unless one is informed." Mullane, 339 U.S. at 314. Adequate notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Id. Further, the notice must "apprise the affected individual of, and permit adequate preparation for, an impending hearing." Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 14 (1978) (internal quotations omitted). Due process is a flexible concept and a determination of what process is due, or what notice is adequate, depends upon the particular circumstances involved. See id. at 14 n.15.

The need for adequate notice is particularly compelling in the circumstances of this case, to protect the same interests the Supreme Court recognized in reaching its conclusion that due process required a pretermination hearing for welfare recipients. See Goldberg, 397 U.S. at 264. Like the welfare recipients in Goldberg, the class members in this case are, by definition, low-income persons who live "on the very margin of subsistence." Mathews v. Eldridge, 424 U.S. 319, 340 (1976). They simply do not have the financial resources to correct with ease by repayment the state's erroneous overpayments. Likewise, the plaintiffs are not as a general matter in the financial position to hire legal counsel to aid in the interpretation of the notice they receive and to

inform them of the state's full authority.[4]  Therefore, the notice that DHS gives must be complete, stated in plain language, and reasonably calculated to afford the plaintiffs an opportunity to raise their objections to the state's proposed actions.  A plainly written, informative notice is imperative in these circumstances to make the hearing to which the plaintiffs are entitled meaningful.

We conclude that the notice the DHS currently sends to the plaintiffs in the form of the demand letter is inadequate.  The demand letter informs the plaintiffs that the state has determined they have received overissuances as a result of agency error and gives notice that the plaintiffs may appeal the existence of the alleged overissuances or the amount, dates, or reason for the alleged overissuances.  The letter contains a "Repayment Agreement," which essentially asks the recipient to agree either to a reduced allotment of future food stamp benefits or to a cash payment schedule.  Although the plaintiffs are informed that they need not sign the Repayment Agreement, the letter tells the plaintiffs that if they "do not make an agreement and make all payments, [the state] may take a future year's income tax refund, other payments that are owed to [the recipient] from the state, or initiate other appropriate collection procedures." (Appellants' App. at 116, 118.)  The letter does not inform the plaintiffs of the state's settlement power, but rather gives the impression to the plaintiffs who have no discretionary funds (which, given the low-income status of the class members, is likely a common situation) that they have no alternative but to agree to reduce their future allotment of food stamps.  Given the circumstances of this case, particularly the financial status of the plaintiffs and the fact that it is the state's own error that has created this predicament, we have difficulty believing that this notice is "reasonably calculated . . . to afford [the plaintiffs] an

---

[4]We note that the plaintiffs are represented in this action by attorneys from the Legal Services Corporation of Iowa.

opportunity to present their objections." <u>Mullane</u>, 339 U.S. at 314. We therefore conclude that the notice is inadequate.[5] <u>Cf.</u> <u>Aacen v. San Juan County Sheriff's Dep't</u>, 944 F.2d 691, 698-99 (10th Cir. 1991) (holding that notice regarding a judgment execution must inform the debtor, who likely has few assets or cash reserves, that various state exemptions as to real and personal property exist); <u>Finberg v. Sullivan</u>, 634 F.2d 50, 62 (3d Cir. 1980) (en banc) (holding that a debtor whose sole source of income was her social security retirement benefits was entitled to be informed that the benefits were exempt from attachment and garnishment).

The familiar, three-part test laid out by the Supreme Court in <u>Mathews v. Eldridge</u> supports our conclusion. Under the <u>Mathews</u> framework, we consider

> first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and agency burdens that the additional or substitute procedural requirement would entail.

<u>Mathews</u>, 424 U.S. at 335. As explained above, we believe the general need for adequate notice and a hearing concerning an alleged overpayment of food stamps is clear under Supreme Court precedent. Applying the <u>Mathews</u> test to the plaintiffs' specific request for notice of the state agency's settlement authority, we conclude such notice is necessary to protect the plaintiffs' due process rights.

---

[5]We note that the proposed notice, which has been approved by both parties and the district court for distribution to the members of the class in the event our present stay is lifted, is clear, direct, and informative. It stands in marked contrast to the complex, confusing, and prolix demand letter currently used by the DHS to inform recipients of the overpayment.

The first factor in the Mathews test concerns the private interest affected by the official action. The plaintiffs in this case have a vital interest at stake, namely, their subsistence. Because of their financial status, the potential deprivation and the hardship the plaintiffs may incur in their attempt to repay the overissuances is substantial, even if by most standards the amount of money at stake may be quite small. Thus, the private interest affected by the state's silence regarding its settlement authority weighs heavily in favor of requiring notice.

The defendants argue that the plaintiffs' interest is not significant because their future allotment of food stamps cannot be reduced without their voluntary consent, see 7 C.F.R. § 273.18(d)(3)(viii) (1995). We note that although the demand letter technically complies with this regulation's requirement that the state agency notify the plaintiffs of the voluntary nature of allotment reduction, this fact is not stated in clear terms. The letter states: "If you fail to make a satisfactory agreement, and the overissuance was the result of household error or intentional program violation, your future Food Stamp Benefit will be reduced to repay the overissuance." (Appellants' App. at 116, 118.) Because there are only three categories of possible reasons for an overissuance -- (1) household error, (2) intentional program violation, and (3) agency error -- the unstated negative implication in this reference to the first two categories is that the state will not reduce future allotments without the consent of the recipient when the claim stems from the third category, agency error. Given the other, more explicit statements concerning the state's ability to take action absent an agreement on the plaintiffs' part, this "notice" is hardly clear, especially to an untrained eye.[6]

---

[6]It has not escaped our attention that in contrast to the present notice's unstated negative implication, the notice in use from 1983 to 1991 clearly and directly stated, "The amount of food stamps you are eligible to receive will not be affected if you can't pay or if you fall behind in your installment payments." (Appellants' App. at 111.)

More importantly, the defendants' argument misses the point. The plaintiffs, who depend on the state to help them meet their basic nutritional needs and who have justifiably relied on the accuracy of past food stamp issuances, find themselves in the predicament of having to find some way to repay the state for overissuances (already spent on food months ago) caused wholly by the state agency's error. The plaintiffs have a significant interest in being fully informed of the state's authority to settle the claim so that they might ask the state to exercise its authority either before or at the "fair hearing."

As to the second Mathews factor, the risk of erroneous deprivation in this case is substantial, for persons who have no idea of the state's settlement authority are unlikely to ask the state to use its benevolent powers. While it is true, as defendants argue, that the state's settlement authority is a discretionary, gratuitous power, common sense dictates that the likelihood of the state employing this authority is much less when a recipient (ignorant of the state's authority) does not request the state to do so or provide the state with information demonstrating the recipient's special needs. Providing specific information in the demand letter regarding the state's settlement authority would put the plaintiffs on notice that they may seek modifications from the DHS in the method and amount of repayment. In turn, with the due process protection of notice in place, the risk of deprivation, erroneous or otherwise, will be reduced.

Finally, the state concedes that its interest is "probably negligible." (Appellants' Br. at 24.) We agree. What the plaintiffs are seeking is a mere clarification in the notice the state already issues. The state can accommodate the plaintiffs with little cost, in either finances or time. Furthermore, we

11

subscribe to the district court's view that to the extent that the state may incur any administrative burden, that burden is "`not overriding in the welfare context.'" Bliek, 916 F. Supp. at 1490 (quoting Goldberg, 397 U.S. at 266).

Balancing these three factors, the plaintiffs' interest in being apprised of the state's settlement authority far outweighs the state's interest in refusing to give notice of it. "Without forms which paint distinctly the complete picture," these plaintiffs are deprived of a meaningful opportunity even to ask the state to exercise its settlement authority. Ellendale v. Schweiker, 575 F. Supp. 590, 601 (S.D.N.Y. 1983). Accordingly, we affirm the district court's holding that "the Due Process Clause requires a complete explanation of the DHS's authority to settle, adjust, compromise, or deny all or part of any claim which results from overissuances." Bliek, 916 F. Supp. at 1494.

## IV.

For the foregoing reasons, we affirm the judgment of the district court and lift our stay on the permanent injunction issued by the court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

12