# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 03-3674

_____

| | |
|---|---|
| Janice Walters, individually and on behalf of all other similarly situated persons whose child support is processed by and through the Central Disbursement Agency, Margaret Powell, individually and on behalf of all other similarly situated persons whose child support is processed by and through the Central Disbursement Agency, | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * |
| Appellants, | * |
| | *   Appeal from the United States |
| Shari Rush, individually and | *   District Court for the |
| on behalf of all other similarly | *   Eastern District of Arkansas |
| situated persons whose child support is processed by and through the Central Disbursement Agency, | * <br> * <br> * <br> * |
| Appellant, | * <br> * |
| Brandi McCloud, individually and on behalf of all other similarly situated persons whose child support is processed by and through the Central Disbursement Agency, | * <br> * <br> * <br> * <br> * <br> * |
| Appellant, | * <br> * |
| v. | * <br> * |
| Richard Weiss, as Director of the Arkansas Department of Finance | * <br> * |

and Administration; Dan McDonald,     *
as Director of the Arkansas Office     *
of Child Support Enforcement of     *
the Revenue Division; J. D. Gingerich,     *
as Administrative Director of the     *
Administrative Office of Courts,     *
    *
           Appellees.     *

_____

Submitted:   September 16, 2004
Filed:    December 17, 2004

_____

Before MURPHY, McMILLIAN and BENTON, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

A class of custodial parents ("plaintiffs") who receive child support payments collected, distributed, and disbursed by a statewide distribution unit ("SDU") operated by the Office of Child Support Enforcement ("OCSE") of the State of Arkansas ("the State") appeals from a final order entered in the United States District Court[1] for the Eastern District of Arkansas granting summary judgment in favor of Arkansas officials ("defendants") on plaintiffs' claims seeking injunctive and declaratory relief under 42 U.S.C. § 1983 for alleged violations of Title IV-D of the Social Security Act, 42 U.S.C. § 651 et seq., and the due process clause of the Fourteenth Amendment. For reversal, plaintiffs argue that the district court erred in holding that they have failed as a matter of law to establish a violation of a federal statutory right that is enforceable under § 1983 or to establish a violation of a federal constitutional right. For the reasons stated below, we affirm.

_____

[1]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

Plaintiffs initially filed this action in Arkansas state court, and defendants removed the case to federal court. The district court granted plaintiffs' request for class certification. Some of plaintiffs' claims were dismissed, and the parties filed cross-motions for summary judgment. In addressing the parties' cross-motions for summary judgment, the district court set forth plaintiffs' pending claims as follows:

First Claim: Defendants' failure to provide Plaintiffs with prompt disbursement of support collected violates Plaintiffs' rights under 42 U.S.C. §§ 654(27) and 654B which requires that the Defendants' state distribution unit distribute child support payments within two business days.

Third Claim: Defendants' failure to provide Plaintiffs with prompt, accurate, timely, frequent and meaningful notice of support collected and distributed violates Plaintiffs' rights under 42 U.S.C. § 654(5).

Fourth Claim: Plaintiffs claim that the denial of accurate, timely, frequent and meaningful notice of payment, collection, allocation and disbursement of child support funds violates Plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment.

Seventh Claim: Plaintiffs claim a denial of an administrative procedural mechanism for correction of errors and delays and meaningful notice of any administrative remedy in violation of the Due Process Clause of the Fourteenth Amendment.

Tenth Claim: Plaintiffs assert that 42 U.S.C. § 657 confers a specific right to be free from administrative costs and fees taken from support payments and to be free from the practice of recoupment to recover from agency errors.

Eleventh Claim: Plaintiffs claim that they are deprived of property by the taking of "administrative fees" from support.[2]

---

[2]Plaintiffs' first and eleventh claims are not at issue in the present appeal.

Walters v. Weiss, No. 4:01-CV-00628, slip op. at 1-2 (E.D. Ark. Oct. 16, 2003) (hereinafter "slip op.").

The district court held that 42 U.S.C. §§ 654(27) and 654B do not create an individually-enforceable federal right to have child support payments distributed within two business days. Id. at 4-8 (citing Blessing v. Freestone, 520 U.S. 329 (1997) (Blessing)). The district court determined that, consistent with Blessing and in view of the absence of any "'rights-creating' language" in those statutory provisions, Congress's underlying intent was to improve the overall efficiency of the states' child support enforcement programs, not to create individual rights. See slip op. at 8 (citing, e.g., Gonzaga University v. Doe, 536 U.S. 273 (2003)). The district court similarly concluded that 42 U.S.C. § 654(5) does not create an individually-enforceable right to receive "prompt, accurate, timely, frequent and meaningful notice of support collected and distributed," as asserted by plaintiffs. Id. at 8-9. Regarding plaintiffs' claims that the OCSE's methods of collecting administrative fees and costs and recouping erroneous overpayments violate an individual right conferred under 42 U.S.C. § 657, the district court noted that plaintiffs have no right to keep funds exceeding amounts collected on their behalf and that 42 U.S.C. § 654(6) specifically provides for the collection of administrative fees and costs. Id. at 10-11. The district court next addressed plaintiffs' procedural due process claims, in which they claimed that a substantial risk of erroneous deprivation of property resulted from mistakes made by the State when recouping overpayments and assessing administrative fees and costs. Id. at 11. The district court reasoned that, because Title IV-D does not impose an unambiguous, binding obligation on the states to distribute child support and to provide detailed notice in the manner demanded by plaintiffs, they had failed to establish a liberty or property interest protected by the due process clause. Id. The district court additionally observed that plaintiffs "ha[d] not demonstrated that the state law remedies are inadequate." Id. The district court granted defendants' motion for summary judgment and dismissed plaintiffs' cross-motion for summary judgment as moot. Id. at 11-12. Plaintiffs timely appealed.

## Discussion

We review a grant of summary judgment *de novo*. The question before the district court, and this court on appeal, is whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). Where, as in the present case, the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. See Crain v. Board of Police Comm'rs, 920 F.2d 1402, 1405-06 (8th Cir. 1990).

On appeal, plaintiffs first argue that the district court erred in dismissing their tenth claim for relief. Plaintiffs contend that the error results from the district court's misunderstanding of their claim. They explain:

> The custodial parents *never contended* they are entitled to payments in excess of the total amount collected pursuant to an order for child support. Neither have custodial parents contended they were immune to state law procedures afforded to the state as a creditor for the repayment of overpayments. But section 657 makes no provision for refusing to disburse support collected for the family because the IV-D agency's prior errors resulted in an alleged earlier overpayment.
>
> The issue is whether the State may unilaterally assert a "self-help" remedy and elevate itself to a preferred creditor status when there are no federal statutory or regulatory provisions authorizing this action.

Brief for Appellant at 16.

In other words, plaintiffs maintain that they are not disputing the State's right to recover past overpayments; rather, they are disputing the way in which the State exercises that right. More specifically, plaintiffs contend that the State is improperly failing to distribute funds in *strict compliance* with 42 U.S.C. § 657. They argue:

"distribution in strict compliance with Section 657 is a right enforceable by a custodial parent," which the district court "wholly failed to recognize." Id. at 19. Plaintiffs quote the following language from Blessing to suggest that such an individually-enforceable federal right has been recognized by the Supreme Court.

> We do not foreclose the possibility that some provisions of Title IV-D give rise to individual rights. The lower court did not separate out the particular rights it believed arise from the statutory scheme, and we think the complaint is less than clear in this regard. For example, [one of the plaintiffs] alleged that the state agency managed to collect some support payments from her ex-husband but failed to pass through the first $50 of each payment, to which she was purportedly entitled under the pre-1996 version of § 657(b)(1). Although § 657 may give her a federal right to receive a specified portion of the money collected on her behalf by [the State], she did not explicitly request such relief in the complaint.

520 U.S. at 345-46 (quoted in Brief for Appellants at 18) (citation omitted).

Moreover, in response to the district court's observation that they have failed to identify any specific rights-creating statutory language, and merely rely upon the general introductory paragraph of § 657, plaintiffs argue: "Section 657 comprehensively covers the distribution of child support. It specifically defines the limited circumstances that allow a state to take some of a custodial parent's collected child support." Brief for Appellants at 22. Plaintiffs conclude that the statute as a whole is so comprehensive and specific that it "leaves no room for any diversion of support to pay debts to the state other than for the repayment of cash assistance." Id. (footnote omitted).

We begin by emphasizing that, in Blessing, the Supreme Court wrote:

> Section 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." We have held that this provision

safeguards certain rights conferred by federal statutes. In order to seek redress through § 1983, however, a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*. We have traditionally looked at three factors when determining whether a particular statutory provision gives rise to a federal right. First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

Even if a plaintiff demonstrates that a federal statute creates an individual right, there is only a rebuttable presumption that the right is enforceable under § 1983. Because our inquiry focuses on congressional intent, dismissal is proper if Congress "specifically foreclosed a remedy under § 1983." Congress may do so expressly, by forbidding recourse to § 1983 in the statute itself, or impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983.

520 U.S. at 340-41 (citations omitted).

The Supreme Court also explained that it is the burden of the party asserting the federal right to "identify with particularity" the right being asserted. The Court noted that, "[o]nly when the complaint is broken down into manageable analytic bites can a court ascertain whether each separate claim satisfies the various criteria we have set forth for determining whether a federal statute creates rights." Id. at 342 (citation omitted). The Court thus indicated that the specific right must be drawn from a particular statutory provision. See id. at 342-43 (noting that "[i]n prior cases, we have been able to determine whether or not a statute created a given right because the plaintiffs articulated, and lower courts evaluated, well-defined claims" and discussing examples of rights found to be created by particular federal statutory provisions). The Supreme Court concluded that the plaintiffs in Blessing had not shown, under the articulated test, that they had an individually-enforceable federal right to the State of

Arizona's "substantial compliance" with Title IV-D.  Id. at 343 ("[T]he requirement that a State operate its child support program in 'substantial compliance' with Title IV-D was not intended to benefit individual children and custodial parents, and therefore it does not constitute a federal right.  Far from creating an *individual* entitlement to services, the standard is simply a yardstick for the Secretary to measure the *systemwide* performance of a State's Title IV-D program.").

As indicated above, however, the Supreme Court went on to comment that it "[did] not foreclose the possibility that some provisions of Title IV-D give rise to individual rights," and that, although § 657 may give a custodial parent a federal right to receive a specified portion of the money collected on his or her behalf by the state, the plaintiffs in Blessing had not explicitly requested such relief in their complaint. Id. at 345.  As noted above, plaintiffs in the present case have seized upon those comments to claim that they have an individually-enforceable federal right to distribution of child support in *strict compliance* with § 657.

The only specific statutory provision that plaintiffs have identified as giving rise to the asserted individually-enforceable federal right is the introductory paragraph, subsection (a), of § 657.  Subsection 657(a) states in relevant part: "IN GENERAL. – Subject to [subsections not at issue in the present case], <u>an amount collected on behalf of a family</u> as support by a State pursuant to a plan approved under this part <u>shall be distributed as follows</u>[.]"  42 U.S.C. § 657(a) (quoted in Brief for Appellants at 20) (emphasis as added by plaintiffs). Consistent with Blessing, 520 U.S. at 340-41, we will not conclude that this particular language creates an individually-enforceable federal right unless plaintiffs have established: (1) Congress intended that the provision benefit them, (2) the right asserted is not so vague and amorphous that enforcing it would strain judicial competence, and (3) the provision unambiguously imposes a binding obligation on the states.  Id. at 341. We agree with plaintiffs that § 657(a) reflects some congressional intent to benefit custodial parents. However, the *right* plaintiffs assert – a right to "distribution in strict compliance with Section 657" – is not unambiguously imposed in § 657(a) as a binding obligation on

the states and, moreover, is too vague and amorphous for judicial enforcement. We therefore hold that § 657(a) does not create an individually-enforceable federal right.

To the extent that plaintiffs alternatively argue that § 657, read as a whole, creates an individually-enforceable federal right to strict compliance with its terms because the overall scheme is comprehensive and specific, we again disagree. Section 657 contains a series of related provisions focusing on the disbursement of child support payments to custodial parents, largely with the purpose of encouraging and helping parents who are receiving public assistance to return to work. It focuses on the relationships between different federal programs and provides guidelines for state agencies, but is not couched in mandatory terms. We therefore hold that § 657, read as a whole, does not create an individual right to distribution in strict compliance with its terms. See Blessing, 520 U.S. at 341 ("[T]he provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms."). In sum, notwithstanding the issues left open by the Supreme Court in Blessing, plaintiffs' § 657 "strict compliance" claim in the present case fails for essentially the same reasons that the plaintiffs in Blessing failed to establish an individually-enforceable right to substantial compliance. Although it is possible that an individually-enforceable right may be derived from a specific provision of § 657, no such right has been "separated out" from the statutory scheme in the present case. See Blessing, 520 U.S. at 345 ("The lower court did not separate out the particular rights it believed arise from the statutory scheme, and we think the complaint is less than clear in this regard.").

Plaintiffs next argue that the district court erred in holding that they failed as a matter of law to establish a constitutional due process violation in their fourth and seventh claims for relief. Plaintiffs describe their due process theory as based upon the deprivation of property that occurs whenever a mistake is made by the State resulting in a denial of child support which they are qualified to receive. Brief for Appellants at 29. They again argue that the district court misunderstood their claims. They explain:

The District Court erroneously identified the deprivation of property as occurring *only from recoupment* or the *imposition of administrative fees*. Custodial parents did not challenge either recoupment or fees as an unconstitutional taking of their support. However, they *did object* to a lack of procedural due process available to challenge the State's assertion that it was owed a debt which could be satisfied by the taking of their future child support payments.

Id.

Citing Mathews v. Eldridge, 424 U.S. 319 (1976) (Mathews), and cases from other circuits, plaintiffs continue:

[A] [Title] IV-D agency's notice of collection and distribution of support must state the information used by the agency to distribute support. The notice must also state how each amount is distributed and provide an explanation if the government has taken some of the support collected or explain why all the support collected has not been sent to the custodial parent.

Id. at 31.

Plaintiffs further contend: "Custodial parents entitled to child support which is processed through the State's SDU must have 'timely and adequate notice detailing the reasons' for the distribution of their support and the right to challenge the State's support distributions." Id. at 32 (quoting Goldberg v. Kelly, 397 U.S. 254, 267 (1970) (welfare recipients are entitled to limited pre-termination procedural safeguards; in that context, due process principles "require that a recipient have timely and adequate notice detailing the reasons for a proposed termination of benefits, and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally")). In the present case, plaintiffs conclude, the district court erred in failing to determine whether, under

Mathews, the State is violating their procedural due process right to notices that would enable them to identify errors made by the State in distributing child support payments.  Brief for Appellants at 34.

"[T]o have a property interest in a benefit, a recipient must have a legitimate claim of entitlement to it."  Board of Regents v. Roth, 408 U.S. 564, 577 (1972).  As the district court noted, plaintiffs in the present case do not have a protected property interest in any actual overpayments of child support because the protected property interest must be limited to child support funds that the custodial parents are qualified to receive.  Cf. Bliek v. Palmer 102 F.3d 1472, 1475 (8th Cir.1997) ("welfare benefits 'are a matter of statutory entitlement for persons qualified to receive them' and thus are a constitutionally protected property interest") (quoting Goldberg v. Kelly, 397 U.S. at 262).  However, plaintiffs contend that they are not asserting a property interest in actual overpayments.  Rather, based upon the inherent risk of an *erroneous* deprivation occurring in the recoupment process, plaintiffs are challenging the alleged lack of sufficient procedures for assessing and disputing the State's position whenever it claims that an overpayment has occurred and may be remedied by withholding collected child support funds from future payments.

The due process analysis set forth by the Supreme Court in Mathews v. Eldridge, 424 U.S. at 335, requires consideration of three factors: (1) the private interest that will be affected by the governmental action, (2) the risk of an erroneous deprivation of such interest through the procedures used, along with the probable value, if any, of requiring additional or substitute procedures, and (3) the governmental interest involved, including the burdens that the additional or substitute procedures would create.  See also Bliek v. Palmer, 102 F.3d at 1476-77(quoting Mathews v. Eldridge).  "Due process is a flexible concept and a determination of what process is due, or what notice is adequate, depends upon the particular circumstances involved."  Id. at 1475.  "'[C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the

-11-

precise nature of the government function involved as well as the private interest that has been affected by governmental action." Goldberg v. Kelly, 397 U.S. at 263.

In Goldberg v. Kelly, the precise governmental action at issue was the termination by the appellant-state of welfare benefits, and the private interest was welfare recipients' need to avoid wrongful termination of those benefits. In Goldberg v. Kelly, the plaintiffs argued that they should be given an opportunity to be heard prior to having their benefits terminated, and the Supreme Court agreed. Thus, the Court held that, to comport with minimal standards of due process, the appellant-state was required to afford welfare recipients some form of an evidentiary hearing before terminating their benefits. The Supreme Court reasoned that, in the welfare context, such hearings were "indispensable" to achieving the goals underlying the statutory program and, moreover, that "the interest of the eligible recipient in uninterrupted receipt of public assistance, coupled with the State's interest that his payments not be erroneously terminated, clearly outweigh[ed] the State's competing concern to prevent any increase in its fiscal and administrative burdens." Id. at 266-67. See also Bliek v. Palmer, 102 F.3d at 1476-78 (in case involving the Food Stamp Act, holding that due process required the appellant-state to give notice to food stamp recipients of its settlement authority when demanding repayment of over-issued food stamp benefits).

In the present case, the government function at issue is the State's collection, distribution, and disbursement of child support payments, which, plaintiffs point out, involve both families receiving public assistance as well as families not receiving public assistance. The precise governmental action being challenged is the recoupment of prior overpayments. The private interest involved is that of custodial parents in avoiding erroneous deprivations of collected child support which they are qualified to receive. Plaintiffs argue that minimal standards of due process require the State to provide more detailed information in the notices accompanying child support payment checks issued by the SDU so that any such errors in the State's

-12-

recoupment practices may be readily identified and challenged. As stated above, plaintiffs argue that these notices must specifically include: what information was used to distribute collected child support, how each amount of collected child support has been distributed, and the reason for any failure by the State to distribute to the custodial parent any portion of the collected child support. We disagree.

Plaintiffs concede that the State is currently providing, along with each standard monthly child support payment check, sufficient information to satisfy the statutory and regulatory requirements in 42 U.S.C. § 654(5) and 45 C.F.R. § 302.54. See Brief for Appellants at 43. Under 42 U.S.C. § 654(5), the State is generally required to include, in any plan for child support, monthly notification of the amount of the support payments collected. Under 45 C.F.R. § 302.54(2), such monthly notices must "list separately payments collected from each noncustodial parent when more than one noncustodial parent owes support to the family and must indicate the amount of current support collected, the amount of arrearages collected and the amount of support collected which was paid to the family."

Moreover, because the precise governmental action being challenged is the recoupment of prior overpayments, the consequence of error is not so burdensome as, for example, was the case in Goldberg v. Kelly, where the governmental action being challenged was the complete termination of benefits. On the other hand, the additional procedure being demanded of the State (individualized notice of several underlying factors in the calculation of the monthly child support distributions) would be considerably more burdensome than the procedure requested in, for example, Bliek v. Palmer, where the plaintiffs sought a general notice of the state's settlement authority as a standard part of the state's repayment demand letters.

Upon careful consideration of the particular circumstances in the present case, we conclude that the government's interest in avoiding the burdensome procedures plaintiffs request far outweighs plaintiffs' interest in avoiding the risk of an erroneous

deprivation and the probable value of requiring those additional procedures. Accordingly, we hold that plaintiffs have not established a procedural due process violation as a result of inadequate notice accompanying their standard monthly child support payment checks.

Plaintiffs next argue that their procedural due process rights are being violated as a result of inadequate administrative grievance procedures to contest alleged errors in the State's recoupment practices, and inadequate notice that such procedures exist. Brief for Appellants at 34.

It is undisputed that the stub accompanying each standard monthly child support payment check issued by the State contains the following printed statement:

> Please retain this stub for your records. If you have questions about this payment or your child support case that is being enforced by [the Arkansas] OCSE, please call the number on the front of this stub. If your concerns are not resolved, you may request an administrative review. You will be asked to complete a Case Review Request Form and explain the problem in writing. The local office manager or Customer Service Unit Manager will review your case. A response detailing the findings and the action to be taken to correct any problems will be provided to you. You may also obtain a copy of the Case Review Request Form by calling the number on the front or on our website at: www.accessarkansas.org/dfa/childsupport/.

See Joint Appendix, Vol. 3, at 730 (Exhibit 18) (quoted in Brief for Appellants at 35).

In arguing that this notice of grievance procedures is constitutionally inadequate, plaintiffs argue that some custodial parents might be confused as to whether the referenced inquiry procedures apply to them. Plaintiffs also allege, based upon anecdotal evidence, that, even when a telephone inquiry is made as instructed, the information provided by the State is confusing and unhelpful because the caller

is not specifically told on the telephone how to request review of his or her case. Brief for Appellant at 36 (citing Declaration of Abigail Miller (Joint Appendix, Vol. 3, at 486-87)).  Regarding the referenced "Case Review Request Form," plaintiffs argue that: "the stub fails to indicate when the form is to be used, or how and from where a form can be obtained."  Id.

We read the above-quoted notice as plainly informing the recipient that grievance procedures may be initiated by completing and submitting a Case Review Request Form and a written explanation of the problem.  Contrary to plaintiffs' argument, the notice does indicate where the form can be obtained.  It states that a copy of the form may be obtained by calling the telephone number provided on the reverse side of the notice or from the website specifically provided.  Moreover, plaintiffs have not alleged, much less supported with evidence, that completion and submission of a Case Review Request Form and a written explanation of the problem results in a denial of administrative review.  In other words, we have no basis from which to conclude that the grievance procedures offered by the State are inadequate. Plaintiffs have failed to establish a genuine issue of fact as to whether they have suffered or are likely to suffer a deprivation of a property interest.  As the Supreme Court stated in Goldberg v. Kelly, 397 U.S. at 262-63, "the extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be 'condemned to suffer grievous loss,' and depends upon whether the recipient's interest in avoiding that loss outweighs the governmental interest in summary adjudication."  In the present case, plaintiffs certainly have not made a showing that they are "condemned to suffer grievous loss" as a result of inadequate grievance procedures or notice thereof.  We therefore hold that these additional procedural due process arguments fail as a matter of law.

Finally, plaintiffs argue that, at a minimum, a procedural due process violation occurs whenever the State *manually* issues a child support payment check because these manual checks are not accompanied by the information required under 42

U.S.C. § 654(5) and 45 C.F.R. § 302.54. It is undisputed that these "manual" checks are issued by the SDU on an *ad hoc* basis to correct past underpayments to custodial parents. The State explains, and plaintiffs do not dispute, that "manual checks are handwritten checks that are issued rarely and allow [defendants] to respond to a custodial parent's request in an emergency situation to alleviate a hardship for that parent." Brief for Appellees at 30.

Due process does not require the State to give the very same notice each and every time it disburses child support funds to a custodial parent. No such requirement is expressed or implied in 42 U.S.C. § 654(5) or 45 C.F.R. § 302.54. Plaintiffs do not allege that custodial parents who receive "manual" checks for emergency situations are denied the required notices if and when they receive their standard monthly child support payment checks. We therefore hold that plaintiffs have failed to establish a genuine issue of fact as to whether the State's issuance of "manual" checks violates the due process clause or any individually-enforceable right under federal law.

## Conclusion

The order of the district court is affirmed.